Nathan Dysart appearing for appellant and appellee Catherine Ellis appearing pro se. Would the appellant please come forward, the appellant is here. The record should note that we have a non-appearance this morning, would the appellee please come forward? Council, can you hear me? Council would you indicate that you can hear me? I'm sorry your honor, if you'll give us a minute here, the technician is, okay. I guess they want you to say something your honor. First of all I want you to speak into the microphone so we can hear you. All right that's much better, now we can hear you at this end. Okay. Thank you. You know it's both of us, both of us are kind of mumblers and we don't have to speak into the phone, so I'm going to speak into the phone so you can speak into the phone. Would you please identify yourself sir? Yes your honor, I'm Nathan Dysart, I'm the attorney for the Ingrams. Please proceed. Your honor, we have filed this appeal, basically this case was decided on summary judgment motions and my understanding of the law is that we receive a review de novo when we appeal on a summary judgment motion and my client just feels he hasn't had his day in court and I think, I agree with him, I think that there were significant issues of fact here which could not have been properly resolved via a summary judgment motion. The issues involved here involved the characterization of a repayment of a loan, my client had claimed it was rent and the trustee had claimed it was a repayment of a personal loan given to him from him personally to the LLC. The other issue involved the value of property and these are of course all matters of fact and we would request the court to reverse the bankruptcy court's rulings that these were properly resolved via the motions for summary judgment and allow this case to be reset for trial so we can have our trial. In the case of the value of the sign, it was valued in the schedules at a specific amount, correct? Well, that's correct, your honor, but... And then, are you aware of any case holding that that is not a judicial admission? Well, your honor, I'm not, but as a practical matter where we've got evidence that the true value of the sign was something other than what was listed in the schedules, I think it's incumbent upon the court to make a finding as to what the true value is rather than merely deciding that as a theoretical matter of law. Well, isn't that, I mean, if it's a judicial admission, aren't you precluded from putting in that evidence at least to the extent you don't explain why the valuation in the schedules was given at that amount? Well, your honor, this is a situation where the LLC, the schedules were filed, this has gone on for many years. I think the schedules were originally filed in 2014 and the schedules didn't specify what the, obviously when you're dealing with the value of something, the question is what's the value, does it represent the purchase price, does it represent the price that's being carried on the books? And obviously the, as individuals, the Ingrams were then dealing with what the actual value of the sign was at the time when it was basically liquidated. And those potentially could be three separate values as a practical matter. That's why a trial is. But as a practical matter, the bankruptcy court has to determine the value, what is the relevant time for determining value? I would argue that's where a trial comes in, your honor. These matters, it's a matter of, the value of the sign is a matter of fact and that's something that's, in my opinion, properly decided at a trial. Obviously the, my client wanted to present evidence via a witness, the manufacturer of the sign and the person who eventually disposed of the sign and he filed an affidavit. But obviously the whole point of having a trial is so that people can appear in court and testify and be cross-examined. And no deposition is equivalent to that. It's a little bit disingenuous at this point, at the appellate point, saying, well, you know, we should have brought this evidence to the intention of Judge Heston. It would have been so simple at the summary judgment time to come in with an affidavit or sworn statement saying this is the history of this sign, this is what it's worth, this is what's happened to it. And that really wasn't done in this case, was it? Well, your honor, I disagree. It was done. We did file a declaration from that witness. And once again, basically it's a situation where, as I said, these matters of fact should be resolved, in my opinion, at trial. And we, basically my client didn't have his trial. And I'm sure you're aware of the procedural history of the case. The case was set for, originally set for trial. And because of the retirement of Judge Snyder, the original trial date had to be postponed. And so things were presented and hearings were had, but they were stretched out over a long period of time. One of the things of having a trial is that it's a date certain, everyone shows up, things are decided. But isn't that also the function of a summary judgment motion? The motion is filed and the party opposing it is given a specific time to put in evidence. And if you don't, there are consequences. I mean, I get that trial is one point of decision. But summary judgment is a summary adjudication. And if we review the record and determine that as of that point in time, there was no tribal issue of material fact given the state of the record as it existed in response to the motion, what's wrong with deciding it? In fact, shouldn't we be deciding it that way? Well, once again, Your Honor, live testimony is not the same as submitting depositions. And as I said, there's no way that a deposition can convey the same amount of information as live testimony. It's one of our earliest principles here in the United States that you have the right to confront the witnesses against you. But that isn't an invariable right. I mean, summary judgment has been around for a very long time. So we grant summary judgment. We grant 12B6 motions where we – I agree that there is a desirability for trial in the appropriate case. But we also have mechanisms that mean we don't go to trial in the inappropriate case. So I don't think the mantra of I get to, you know, I want to – and it's your witnesses. I mean – You're talking about depositions. Are you referring to declarations, submission of declarations? On the sign. Right. And it sounds like you would just have us not ever do summary judgments based on your view. Well, Your Honor, summary judgments are appropriate where the only issues are issues of law. And I think that there are significant issues of fact here. And I think that obviously the courts are busy. They want to resolve these cases in an expedient fashion. Can I interrupt you, sir? You see, I don't see this as something where the court didn't have time to take care of the case. The court took plenty of time on this case. It's the lawyering in this case that's the problem. I mean, you're basically saying that, first of all, your client files a set of schedules that says that they own the neon sign and it's worth $7,000. And then during the pendency of the case, the neon sign disappears and your client says, oh, I don't think I owned it. We submitted some affidavits that say somebody else owns it. Then you submit another affidavit and say, well, it's junk. All of this could have been avoided with a simple certificate submitted in a timely fashion that set forth the facts as you wish to litigate them. The way the facts came in, you could see why the judge might decide, I've given you an opportunity to present evidence to create a material fact for litigation. I've got evidence before me that establishes both ownership and value. And you haven't, all I've got here is kind of a sham affidavit, at least it could be characterized as a sham affidavit, that's trying to create an issue of material fact in opposition to all the other facts that have previously been presented to the court. You may respond. Well, Your Honor, those impressions that you have are exactly the reason why we need to have a trial in this matter. That summary of facts, basically the schedules were submitted in, I believe, 2014 or 2015. I don't have the date of the filing handy in front of me. But that went on for, the sign was then in storage for several years. The trustee took no action to secure the sign or display any interest in the sign. My client was also the landlord and had this in storage. Well, that may give rise to some claims on your client's part, but it doesn't give them the right to summarily dispose of an asset of the estate. Which is what they did, which is why they're in trouble. So, you know, if they have storage costs or something, they can bring that up, I suppose, I don't know, in the appropriate way, in the appropriate form. But the bottom line is that they acted extra-judicially. They liquidated the asset. The asset has to be valued. They had previously valued it in a document. They filed under penalty of, the debtor filed under penalty of perjury at a specific amount. The document was signed by one of your clients, correct? That's correct, Your Honor. And so, I'm struggling to see the great miscarriage of justice here. You provided some response, but was your, do you ever have a, you had a third-party affidavit of some type. It wasn't signed, though, was it? I'm not sure at this point, Your Honor. I believe the original was signed. All right. We'll go back and look at that. That was the declaration of Duane Taylor wasn't signed, according to the trustee. And I'll ask the trustee to clarify that. But, you know, you talk about the evidence you had at summary judgment. You didn't have, I don't believe, a declaration valuing it a specific amount. You had some statements regarding it not being contrary to the schedules and contrary to other testimony of your client. What else did you have that at summary judgment created a tribal issue of material fact? Well, Your Honor, the fact that this sign basically sat, my client also filed a declaration regarding the value of the sign. The sign basically sat in storage. The declaration, if we were given an opportunity, the testimony of the sign maker will show that this was a custom sign. It could not be used for anything else. But you had that opportunity, the opportunity to put in that declaration on summary judgment, did you not? We had the opportunity, and we did. Well, did you put in a signed declaration to that effect? Well, Your Honor, I think that we put in a, I had a letter from the sign maker, and we put in one of the standard e-signature declarations. Okay. If we're no longer going to be allowed to do e-signatures, you know, I can certainly, when I started out, I was certainly familiar with the old way where we had people put pen to paper and sign the document. So if we're going to have to go back to that, I don't have a problem. That's not what I'm talking about. That's not what I'm talking about. So let's, we'll look at, we'll reexamine the record, and we'll allow the trustee to be heard on the quality of the evidence. Wasn't Mr. Taylor's declaration was submitted, but it was unsigned? He's the guy who said it was scrap? The court properly decided not to consider that declaration as an unsigned declaration. You have 30 seconds to go, sir, and then your case will be deemed submitted. Do you want to sum up? Well, Your Honor, as I said, it's our opinion that this matter needs to go to trial, and that obviously the, you judges have raised some concerns, but as I said, I think these issues haven't been resolved as issues of fact, and I urge you to reverse the summary judgment rulings and have the case reset for trial. Thank you. Thank you. And we have no appearance by the trustees? No, the trustees here. Trustees here? Yes. The appellee? Yes, Your Honor, Kathy Ellis, the trustee and the plaintiff in this action. This was a complaint, an adversary complaint that alleged four causes of action, and we've only got one that's for argument before the court today, the 549 issue on the sign. The answer to the amended complaint filed by the defendants in March of 2008, admitted to ownership of the sign by the estate. The testimony of defendant Jana Ingram at her deposition also confirmed that it's property of the estate and confirmed its value as set forth in the schedules. The schedules listed it as property of the estate, and there was never any attempt to amend the schedules to claim that it wasn't property of the estate. There wasn't an attempt to amend the schedules a few days before we filed the second summary judgment motion to devalue the sign, but no attempt to claim that it wasn't property of the estate. Only after the first hearing on the second motion for summary judgment did the defendant change his claim and allege for the first time that he acquired ownership of the property under a landlord's lien theory. What the judge had done was give a continuance to the debtor and allow him time to provide objective facts as to the characteristics of the sign, the shape, the sign, the date of the inspection, the size, the color of the material, or even what would constitute scrap metal. He didn't do that. What he did is filed a supplemental declaration that said it's my property on the basis of a landlord's lien, and he offered the conclusory statement that it's worthless. He didn't do what the judge had requested, which is provide some objective facts. Once you've destroyed the sign, there's no way to test the evaluation that changes from these schedules. There was never any attempt to amend the answer to allege the new ownership issue. There was never an attempt to amend the schedules to, well, no effective amend to change the schedules to delete ownership only to try to change the value. Counsel, counsel, may I interrupt you? All that being said, isn't there an unresolved issue of material fact as to whether the property was worth $7,000? No. I mean, you say that the statement that it has been destroyed and is worthless is conclusionary, but it's also factual. Isn't that correct? Well, it's factual, but they need to present some evidence of why they would come up with a different value of what they previously swore to. Say, oh, I was mistaken in my valuation as $7,000 because the sign was, you know, 6 by 4, and it was made out of wood or it was made out of cheap plastic something, and the judge gave them the opportunity for the second time to come up with some objective facts. If they had done that, maybe they could have created a disputed ownership fact. Is your complaint that there are no objective facts or is it that there's insufficient detail? I mean, as I understand what the people are asking for a retrial on is saying, well, this was a neon sign. It was customary to this specific location. After it comes down, it's destroyed because no one else will want it, and it has no value. It's scrap. Isn't that something at least that's been intimated or sufficiently raised in the case? You can't cross-examine that. You can't revalue that conclusion. You can't cross-examine anything on summary judgment, counsel. Well, I guess what I'm saying is if they would have offered some facts as to what the characteristics of the sign were, perhaps they could have created an issue of fact, but all they offered are conclusory statements with no facts to back it up. They simply concluded the sign was junk. It was not worth anything to me. They offered the unsigned declaration of Duane Taylor. And, counsel, just to be clear, I've got the Duane Taylor declaration in front of me in the record. I don't see a slash S signature. I just see a blank line. Correct. There's two offered declarations of Duane Taylor. Okay. One is attached to document number 116, the response to the summary judgment. Right. And that does have an S slash S. Okay. But that declaration says nothing about characteristics. Right. It says the sign was manufactured in a way, we don't know how, that it had no value except for scrap metal. We don't know what in a way is because that's not a statement of fact. The second declaration of Duane Taylor that is not signed is document number 123. Okay. And that is neither signed or dated, no S slash S. That was not considered by the Court, nor were the unsigned attempted amended schedules. All right. Thank you for that clarification. Okay. So, with that said, I think without any material issues of disputed fact that they haven't admitted, there is no basis to warrant that this would go to trial. Counsel, I have one question. The Court found that the schedules were a judicial admission. And if the schedules constitute a judicial admission, as I understand judicial admissions, that withdraws the issue. You know, they can't offer contrary evidence. I think you're correct that they could try to explain the schedules away. They clearly didn't. But the Ninth Circuit hasn't found that schedules are a judicial admission. Other circuits have. Are you aware of any cases where schedules have not been found to be a judicial admission? No. Okay. Thank you. Thank you. Thank you, Counsel. This case is submitted.
judges: Kurtz, Taylor, Brand